UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

A.A.C. and T.C., on behalf of their minor
children G.C. and A.C.,

       v.

                                   24-CV-1047 (JLS)

STARPOINT CENTRAL SCHOOL
DISTRICT, DR. SEAN CROFT,
individually and in his official capacity as
current Superintendent, MAUREEN
BRAUNSCHEIDEL, individually and in
his [sic] official capacity as former
Superintendent, DR. ALAN INGRAHAM,
individually and in his official capacity as
High School Principal, DR. COREY
GRAY, individually and in his official
capacity as Middle School Principal, DR.
THOMAS SZALKOWSKI, individually
and in his official capacity as School
Physician, FRAN ANDERSON,
individually and in her official capacity as
Middle School Nurse, JOHN ANDREWS,
individually and in his official capacity as
Director of Administrative Services,
VINCENT DELL'OSO, individually and
in his official capacity as Athletic
Director, JOHN DOE(s), individually and
in their official capacities,

              Defendants.

_____

## **DECISION AND ORDER**

Plaintiffs bring this action on behalf of their minor children, who are students

in the Starpoint Central School District (the "District"). Plaintiffs sue the District,

and several District officials, based on their refusal to allow Plaintiffs' daughter,

A.C., to attend school unless she receives a Tdap vaccination which, according to Plaintiffs, would be detrimental to her health. Before the Court is Plaintiffs' motion for a preliminary injunction, seeking to enjoin Defendants from excluding A.C. from school for failure to receive the Tdap vaccine. The motion is now granted.

In New York, "a child may be exempted from school immunization if 'any' state-licensed physician 'certifies that such immunization may be detrimental to [the] child's health.'" *Goe v. Zucker*, 43 F.4th 19, 26 (2d Cir. 2022) (quoting N.Y. Pub. Health Law § 2164(8)). Plaintiffs submitted a facially and procedurally valid exemption request on behalf of A.C., which was completed by A.C.'s treating physician based on his conclusion that A.C. should temporarily delay vaccination while he explores possible impacts on her heath. The District, however, denied that request after the school physician improperly second-guessed the treating physician's conclusion.

Plaintiffs maintain that, as a result of Defendants' actions, their rights have been violated under a plethora of federal and state constitutional provisions and statutes. As set forth below, Plaintiffs do not demonstrate a likelihood of success on the merits of their claims under the United States Constitution, the New York State Constitution, or a federal statute. But they *do* make that showing as to one state-law claim based on the District's improper denial of the valid exemption request. Indeed, "the statute does not create a system in which school officials are given improper discretion to evaluate the reasons given for a requested medical exemption." *Miller v. McDonald*, 130 F.4th 258, 269 (2d Cir. 2025). This Court

has—and finds no basis to decline—supplemental jurisdiction over that state-law claim. And as set forth below, the preliminary injunction factors require ruling for Plaintiffs on this record. The preliminary injunction motion, therefore, is granted.

## BACKGROUND

Plaintiffs A.A.C. and T.C. assert claims under federal and New York law on behalf of their minor children, G.C. and A.C. *See* Dkt. 25 ¶¶ 15-17. G.C. and A.C. have attended school in the District for their "entire academic career[s]." *Id.* ¶¶ 16-17. Currently, A.C. is a student at Starpoint Middle School. *Id* ¶ 17. A.C. is the focus of this motion.

Plaintiffs sue the District, as well as several District officials—namely, Maureen Braunscheidel, Dr. Alan Ingraham, Dr. Corey Gray, Dr. Thomas Szalkowski, Fran Anderson, John Andrews, and Vincent Dell'Oso (collectively, the "Individual Defendants"). *See id.* ¶¶ 22-28. The Individual Defendants are named in both their official and individual capacities. *See id.*

## I.    PLAINTIFFS' ALLEGATIONS AND CLAIMS[1]

According to Plaintiffs, G.C. and A.C. have "documented medical conditions." *Id.* ¶ 32. These include "histories of adverse reactions to vaccines that make vaccination medically contraindicated." *Id.* Specifically, both "G.C. and A.C. have

---

[1] This section contains a summary of the Amended Complaint filed on December 29, 2024, which is the operative Complaint. *See* Dkt. 25.

documented histories of neurological symptoms following previous vaccinations."
*Id.* ¶ 38.

On September 13, 2024, Plaintiffs "submitted requests for medical exemptions from immunization requirements to the District." *Id.* ¶ 43. But on September 27, 2024, Defendant Braunscheidel—acting superintendent at the time—"denied the medical exemption requests for G.C. and A.C." *Id.* ¶ 91. Plaintiffs believe this was an "improper and unsupported decision to reject Plaintiffs' request for a vaccine waiver for their children." *Id.* ¶ 56. Plaintiffs appealed the decision to the New York State Commissioner of Education on October 10, 2024, but "voluntarily dismissed" the appeal on December 5, 2024. *See id.* ¶¶ 105, 110.[2]

On December 4, 2024, Plaintiffs submitted another exemption request to the District for A.C. *See id.* ¶ 73. The previous day, Plaintiffs had "obtained a medical exemption from Dr. Joseph A. Riccione for A.C.'s Tdap vaccination, citing the risk of exacerbating her documented neurological conditions." *Id.* ¶ 71. But on December 23, 2024, the District denied the request and "announced its intention to exclude A.C. from school beginning January 2, 2025 . . . ." *Id.* ¶ 75.

Plaintiffs believe that the "District's denial again exceeded its statutory authority, and in violation of New York State law, by substituting its lay judgment for that of a New York State licensed physician who personally examined A.C." *Id.*

---

[2] Plaintiffs purport that the appeal was "moot" because "G.C. had been coerced into receiving the meningitis vaccine on October 23, 2024, and A.C. obtained a valid medical exemption for the Tdap vaccine on December 3, 2024." *Id.* ¶ 110.

¶ 76. And they claim that the "District has engaged in a pattern of discriminatory treatment regarding vaccination appointments, specifically targeting A.C. and G.C. while accommodating other students . . . ." *Id.* ¶ 77. They also purport that the District has taken "broader retaliatory and discriminatory actions" against them. *Id.* ¶ 111.

The Amended Complaint includes ten named causes of action:

1. Violation of the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA") against all Defendants;

2. Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794) ("RA") against the District and Defendants Croft, Braunscheidel, Szalkowski, Anderson, Gray, Ingraham, and Dell'Oso;

3. Violation of HIPAA Privacy Rule (45 C.F.R. § 164.502, *et seq.*) against the District and Defendants Croft, Braunscheidel, Szalkowski, Andrews, Anderson, Gray, and Ingraham;

4. First Amendment Retaliation under 42 U.S.C. § 1983 against all Defendants;

5. Fourteenth Amendment Due Process under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Gray, Ingraham, Anderson, and Andrews;

6. Fourteenth Amendment Equal Protection under Section 1983 against Defendants Croft, Braunscheidel, Dell'Oso, Gray, Ingraham, and Anderson;

7. Right To Refuse Medical Treatment under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Ingraham, Dell'Oso, Gray, and Anderson;

8. Constitutional Privacy Claim under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Andrews, Anderson, Gray, and Ingraham;

9. *Monell* Claim under Section 1983 against the District; and

10. New York State Constitutional Violation against All Defendants.

*See id.* ¶¶ 168-264. And as discussed in detail below, the Amended Complaint, fairly read, also contains a claim under New York State law based on the allegedly improper denial of A.C.'s exemption request.

In this lawsuit, Plaintiffs seek—ultimately—an order enjoining Defendants from "excluding Plaintiffs' children from school," requiring Defendants to "accept the medical exemptions of Plaintiffs' children," and "[p]rohibiting any retaliation against Plaintiffs or their children." *Id.* at 47.[3] They also seek declaratory relief, compensatory damages, and punitive damages, as well as attorneys' fees and costs. *Id.* at 46-47.

---

[3] Unless otherwise noted, page numbers refer to the CM/ECF numbering in the header of each page.

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on October 28, 2024.  Dkt. 1.  That same day, they filed a motion for a temporary restraining order ("TRO") and a preliminary injunction ("PI").  Dkt. 2.

### A. First Motion for a TRO and PI

In their original motion, Plaintiffs stated that A.C. "ha[d] an appointment scheduled for December 3, 2024, with Dr. Joseph Riccione[.]"  Dkt. 2-1 at 3.  But the District, they claimed, was "excluding" A.C. from school "despite her scheduled appointment."  *Id.*  As such, Plaintiffs sought "narrow" relief—namely, an order "allowing [A.C.] to return to school pending her December 3, 2024 medical appointment."  *Id.*  Defendants opposed the motion.  Dkt. 9.  On November 5, 2024, the Court heard argument.  *See* Dkt. 12.

On November 18, 2024, this Court so-ordered a stipulation, Dkt. 14, providing that A.C. would "be permitted to return to her classes and school-related activities at Starpoint Middle School, effective as of November 6, 2024," and "continue attending classes and participating in activities" until "her doctor's appointment on December 3, 2024."  *Id.* at 2.  In addition, Plaintiffs agreed to "withdraw their motion for a Temporary Restraining Order and Preliminary Injunction without prejudice."  *Id.*

## B. Amended Complaint and Second Motion for a TRO and PI

On December 29, 2024, Plaintiffs filed an Amended Complaint, which is now

the operative Complaint. Dkt. 25. That same day, Plaintiffs filed a renewed motion

for a TRO and a PI. Dkt. 26-27.[4] As to the TRO component, Plaintiffs sought an

order "enjoining Defendants from denying A.C.'s medical exemption and excluding

her from attending school during the pendency of this action." Dkt. 26 at 1.

On January 2, 2025, the Court heard argument on the TRO request. *See* Dkt.

33. The Court then issued an Order (Dkt. 34) providing that:

> Defendants, as well as their officers, agents, servants, employees, and
> attorneys, and all persons acting in concert or participation with them,
> are enjoined, effective immediately, from (a) excluding A.C. from
> attending school based on Defendants' denial of her medical exemption
> under New York Public Health Law § 2164(8); or (b) taking any
> retaliatory actions against Plaintiffs related to their pursuit of legal
> remedies in this matter . . . .

*Id.* at 2.[5] The Court further ordered that "this TRO shall remain in effect through

the disposition of Plaintiffs' Motion for a Preliminary Injunction." *Id.*

## C. Instant Motion for a Preliminary Injunction

Presently before the Court is Plaintiffs' outstanding request for a preliminary

injunction. *See* Dkt. 26. Plaintiffs argue that the District's denial of A.C's

exemption request violates "statutory, constitutional, and federal disability

---

[4] Defendants opposed the motion, Dkt. 32, and Plaintiffs filed a supplemental
memorandum in support. Dkt. 31.

[5] The Court stated the reasons for its decision on the record at the January 2, 2025
proceeding. *Id.* at 1. A transcript of that proceeding is at Dkt. 35.

protections." Dkt. 26-13 at 4.  As such, they seek an order "requiring Defendants to accept A.C.'s medical exemption and allow her to attend school pending final resolution of this matter." Dkt. 26 at 1.

1. The Parties' Initial Submissions

In their motion, Plaintiffs state that A.C.'s "documented medical conditions, including a history of adverse vaccine reactions," have been "corroborated by a licensed physician's medical exemption form. . . ." Dkt. 26-13 at 3.  But the District, they claim, "unlawfully denied A.C.'s exemption request, disregarding her physician's expertise and substituting its own lay judgment." *Id.*  They argue that the exclusion of A.C. from school "will cause A.C. irreparable harm, including loss of educational access, emotional distress, social stigmatization, and academic disruption." *Id.*

Plaintiffs claim that they have "demonstrated a compelling likelihood of success on the merits of their claims, which encompass violations of statutory, constitutional, and federal disability protections." *Id.* at 4.  And they maintain that the "District's exclusion of A.C. from school, based on its arbitrary and discriminatory denial of a valid medical exemption, deprives her of fundamental constitutional and statutory rights that cannot be remedied through monetary damages alone." *Id.* at 13. According to Plaintiffs, the "balance of hardships overwhelmingly favors Plaintiffs," and "[g]ranting Plaintiffs' requested relief aligns with the public interest in safeguarding constitutional rights, promoting equitable

9

access to education, and maintaining trust in the integrity of public institutions." *Id.* at 16-18.

In opposition, Defendants argue that "Plaintiffs' application for injunctive relief should be denied for a number of reasons." Dkt. 32-1 at 4. They claim that this Court lacks subject matter jurisdiction, and should abstain from adjudicating Plaintiffs' claims under various doctrines. *Id.* at 5-6.[6] They also maintain that Plaintiffs "cannot establish a likelihood of success on the merits." *Id.* at 6.

The parties filed pre-hearing briefs, Dkt. 50, 51, as well as supplemental briefs. Dkt. 55, 57. In addition, Plaintiffs filed a memorandum "summarizing key deposition testimony relevant to the issues in the preliminary injunction hearing." Dkt. 71.

### 2. Pre-Hearing Discovery and Motions

The Court permitted discovery in advance of the preliminary injunction hearing. *See* Dkt. 36. The parties filed motions relating to various issues including, for example, depositions and interrogatories. *See, e.g.,* Dkt. 41, 42, 43. The Court heard argument on these motions and, thereafter, resolved them by text order. Dkt. 46.

---

[6] The Court addressed abstention at the January 2, 2025 TRO argument, and concluded that it need not abstain. *See* Dkt. 35 at 5 (The Court: "I'm not seeing an abstention here under any of the abstention doctrines, *Younger, Burford, Colorado River, Pullman* . . . . I have looked at the caselaw and I'm satisfied that there is no cause for abstention here, to the extent that there is a live Federal question here or there, abstention is not appropriate").

The parties also filed motions *in limine*. *See* Dkt. 47 (Plaintiffs); Dkt. 48 (Defendants).[7] On February 7, 2025, the Court issued an order resolving these motions. Dkt. 53. In its order, the Court specified that, regarding likelihood of success on the merits, the hearing would focus on:

1.  Whether the exemption request was facially and procedurally valid;

2.  The reason(s) that Defendants sought more information, and scrutinized and rejected the exemption; and

3.  Whether any such proffered reason offends the Constitution.

*Id.*[8]

On February 9, 2025, Defendants filed a motion seeking "an Order from this Court vacating the TRO (Dkt. 34) and denying Plaintiffs' motion for a preliminary injunction." Dkt. 56. Defendants argued that, by its rulings on the motions *in limine*, the Court has "foreclosed the possibility that Plaintiffs can meet their burden of proof necessary to secure a preliminary injunction." *Id.* In response, the Court ordered that, because the issues in this case hinge partially on credibility

---

[7] Both sides opposed the other's motions. *See* Dkt. 49, 52.

[8] As such, the Court: (1) granted Plaintiffs' [47] motion to the extent that medical opinion evidence shall not exceed the specified topics; (2) ordered that A.C.'s substantive entitlement to the exemption, as a matter of medical opinions, is not a proper inquiry for this Court; (3) granted Defendants' [48] motion to preclude opinion testimony that the tic disorder is progressive or unstable in accordance with the parameters identified by the Court; and (4) granted Defendants' [48] motion to preclude opinion testimony that the tic disorder was caused by a 2018 vaccination. *Id.*

determinations, the Court will address Defendants' [56] motion following the preliminary injunction hearing. Dkt. 65.

The Court then addressed additional discovery motions. *See* Dkt. 62. Specifically, on February 19, 2025, Plaintiffs moved to strike declarations of: (1) Dr. Eric Thierman, who "provided pediatric medical care for A.C. from her birth . . . up to November 7 of 2023 (Dkt. 58 ¶ 2); and (2) Dr. Debra S. Blog, Medical Director of the Division of Vaccine Excellence, New York State Department of Health (Dkt. 59). *See* Dkt. 62-2 at 5-11. They also moved to compel disclosure of "unredacted medical exemptions issued to other students in the [D]istrict." Dkt. 62 at 1-2. Defendants opposed the motions, Dkt. 66, and Plaintiffs replied. Dkt. 67. The Court resolved the motions by text order on March 5, 2025. Dkt. 68.[9]

### 3. Preliminary Injunction Hearing and Post-Hearing Submissions

On March 13 and 14, 2025, the Court held the preliminary injunction hearing. *See* Dkt. 73-74. Dr. Riccione, Plaintiff A.A.C., and Defendants Braunscheidel, Croft, and Dr. Szalkowski credibly testified at the hearing. *See id.* After the hearing, the parties submitted deposition designations. *See* Dkt. 76 (Defendants); Dkt. 82 (Plaintiffs).[10] Plaintiffs designated testimony from Dr.

---

[9] The Court denied Plaintiffs' motions to strike and granted their motion to compel—provided that the parties coordinate regarding logistics and any details relating to confidentiality protections. *Id.*

[10] Defendants responded to Plaintiffs' designations, arguing that the Court should "disregard these submissions in their entirety. . . ." *See* Dkt. 89.

Riccione, Defendants Dr. Szalkowski, Croft, Andrews, Braunscheidel, and Gray, as well as Plaintiffs T.C. and A.A.C. *See* Dkt. 82. Defendants designated testimony from Plaintiff T.C. *See* Dkt. 76.

On March 24, 2025, the Court issued an order (Dkt. 77) stating that, in post-hearing briefs, the parties "should be sure to address, in depth, Plaintiffs' state-law claim for failure to grant a valid exemption . . . ." *See* Dkt. 77 at 1-2. The Court further stated that its "recent review of additional caselaw" revealed that "supplemental jurisdiction may be appropriate in certain exceptional circumstances." *See id.* at 2. The Court ordered, therefore, that the parties' post-hearing briefs should "address all aspects of [28 U.S.C. §] 1367, including reasons and factors relevant to whether the Court ought to retain or decline jurisdiction," as well as "the merits of this state-law claim . . . ." *Id.* The Court explained:

> Given the Court's prior statements on the issue, including its decision on the motions *in limine*, and its evidentiary rulings—which were driven by the Court's then-current view of the issue prompted by Defendants' arguments and caselaw citations addressing it—the scope of evidence received at the preliminary injunction hearing, as a result, may have been constrained, slightly, as it might have related to this claim. Thus, in fairness to both sides, the forthcoming briefing may include reference to new affidavits, or additional deposition transcripts, that would bear on the Section 1367 and merits issues discussed above.

*Id.*[12]

---

[12] The Court's prior statements and rulings are hereby reconsidered as appropriate and as set forth below, consistent with the March 24, 2025 Order. *See Sanderson v. Leg Apparel, LLC*, No. 1:19-CV-8423-GHW, 2023 WL 8039499, at *1 (S.D.N.Y. Nov. 20, 2023) ("a district court has discretion to reconsider its non-final orders *sua sponte*.") (citing Fed. R. Civ. P. 54).

The parties then filed their post-hearing briefs. *See* Dkt. 86-87 (Plaintiffs); Dkt. 88 (Defendants). Plaintiffs attached various materials, including additional declarations from Plaintiffs A.C. and A.A.C. dated April 10, 2025. *See* Dkt. 86-5; 86-6. Defendants submitted—among other materials—an additional declaration from Defendant Dr. Szalkowski dated April 4, 2025. *See* Dkt. 88-1.

## DISCUSSION

On this record, and in this preliminary injunction posture, Plaintiffs have not shown a likelihood of success on the merits of their claims under the United States Constitution, the New York State Constitution, and federal statutes. But this record reveals the opposite as to the state-law claim based on Defendants' denial of the facially and procedurally valid exemption request that Dr. Riccione completed on A.C.'s behalf. In the absence of a basis to decline jurisdiction over that claim— and because the remaining preliminary injunction factors favor Plaintiffs—the preliminary injunction motion is granted.

## I.    PRELIMINARY INJUNCTION FACTORS

To "obtain a preliminary injunction against governmental action taken pursuant to a statute, the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020) (internal citation and alteration omitted). In addition, (4) the "movant also must show that the balance of equities tips in [its] favor." *Id. See also Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) ("The

14

default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that '[s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest'") (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). With respect to the state-law claim addressed below, all of the preliminary injunction factors favor Plaintiffs.[13]

## A. Likelihood of Success on the Merits

As noted above, Plaintiffs assert the following enumerated causes of action:

- Violation of the ADA against all Defendants;

- Violation of the RA against the District and Defendants Croft, Braunscheidel, Szalkowski, Anderson, Gray, Ingraham, and Dell'Oso;

- Violation of HIPAA Privacy Rule against the District and Defendants Croft, Braunscheidel, Szalkowski, Andrews, Anderson, Gray, and Ingraham;

- First Amendment Retaliation under Section 1983 against all Defendants;

- Fourteenth Amendment Due Process under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Gray, Ingraham, Anderson, and Andrews;

---

[13] To "warrant a preliminary injunction, Plaintiffs need not show that there is a likelihood of success on the merits of all of their claims for relief. Rather, Plaintiffs need to show a likelihood of success on the merits of at least one of their claims." *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018) (internal citation, alternations, and quotation marks omitted).

- Fourteenth Amendment Equal Protection under Section 1983 against Defendants Croft, Braunscheidel, Dell'Oso, Gray, Ingraham, and Anderson;

- Right To Refuse Medical Treatment under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Ingraham, Dell'Oso, Gray, and Anderson;

- Constitutional Privacy Claim under Section 1983 against Defendants Croft, Braunscheidel, Szalkowski, Andrews, Anderson, Gray, and Ingraham;

- *Monell* Claim under Section 1983 against the District; and

- New York State Constitutional Violation against All Defendants.

*See* Dkt. 25 ¶¶ 168-264.

In addition, Plaintiffs' allegations across the Amended Complaint include a state-law claim that the District's denial of A.C.'s exemption request was improper. *See, e.g., id.* ¶¶ 1-5, 10-14, 71-76, 112, 141-42, 270-74. Plaintiffs allege—for example—that "the District denied [A.C.'s] valid medical exemption[,] and announced its intention to exclude A.C. from school . . . "—and that the denial "exceeded its statutory authority, and in violation of New York State law, by substituting its lay judgment for that of a New York State licensed physician who personally examined A.C." *Id.* ¶¶ 75-76. If brought in state court, such a claim would typically fall within Article 78 of the State's Civil Practice Law and Rules ("CPLR"). *See Goe*, 43 F.4th at 34 ("if a medical exemption is denied by school

authorities, a parent has the right to . . . seek judicial review in state court through an Article 78 proceeding").[14]

---

[14] Article 78 "is a method for challenging state administrative action." *Davis v. Halpern*, 813 F.2d 37, 38 (2d Cir. 1987) (citing *Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986)). The "substantive scope of an Article 78 proceeding is limited." *Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024). The "only questions that may be raised in a proceeding under this [78] article are:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

*Id.* (citing CPLR 7803). The fact that Plaintiffs do not out call this claim as a separate enumerated cause of action does not preclude this Court's consideration of the claim on this motion. Indeed, a "complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claim." *Morris v. Schroder Cap. Mgmt. Int'l*, 445 F.3d 525, 530 n.3 (2d Cir. 2006). *See Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *11 (S.D.N.Y. July 12, 2024) (courts "look beyond the labels a plaintiff uses to determine if an action should be brought as an Article 78 proceeding"); *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980) ("Generally[,] a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories or statutory basis supporting the claim"); *New York State Waterways Ass'n, Inc. v. Diamond*, 469 F.2d 419, 421 (2d Cir. 1972) ("While plaintiffs' complaint is hardly a model of compliance with the Federal Rules of Civil Procedure 8(a)(1) requirement of a 'short and plain' statement of the claimed jurisdictional basis of a suit, it is our duty to read it liberally, to determine whether the facts set forth justify taking jurisdiction on grounds other than those

For the reasons below, each of the claims in Plaintiffs' enumerated causes of actions is unlikely to succeed on the merits. But Plaintiffs' "Article 78"-type claim is likely to succeed on the merits.

1. First Amendment Retaliation (Fourth Claim)

Plaintiffs argue that Defendants took various actions with respect to A.C.'s exemption request—and ultimately denied the request—to retaliate against Plaintiffs for: (1) retaining counsel; and/or (2) filing an appeal with the New York State Commissioner of Education as to an earlier request. There is no likelihood of success on the merits of this claim.[15]

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (internal citation and quotation marks omitted). In the context of Section 1983 claims brought on behalf of a minor student against a school district and its officials, the Second Circuit has used the following test: To "state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected [conduct]." *Cox v. Warwick Valley Cent. Sch.*

---

most artistically pleaded"). Defendants, moreover, raised the "Article 78-claim" issue themselves, and litigated it fully as if it existed in the Amended Complaint.

[15] Plaintiffs' theories of First Amendment retaliation have evolved over the course of this litigation. To the extent Plaintiffs assert additional theories not addressed in this decision, those theories are undeveloped and lack merit.

*Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003); *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010)).

An "adverse action in a First Amendment retaliation case is 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Id.* (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). Under "this 'objective' standard, an adverse action must be more than '*de minimis*' to support a First Amendment retaliation claim." *Id.* (quoting *Zelnik*, 464 F.3d at 226). Recognizing "that this test is highly context-specific," the Second Circuit applies it "'in light of the special characteristics of the school environment.'" *Id.* (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

Here, Plaintiffs point to several supposedly retaliatory acts in connection with A.C.'s request, none of which amounts—in this preliminary injunction posture—to unlawful retaliation in violation of the First Amendment.[16]

### a. *Escalation of A.C.'s Request*

Plaintiffs rely on the fact that A.C.'s exemption request was administratively handled at the District level, rather than at the building level, per usual procedure. The escalation of Plaintiffs' request, however, does not give rise to a retaliation claim because it is not an actionable adverse action. The credible testimony of multiple witnesses confirmed that, regardless of whether a request is

---

[16] Defendants do not dispute, for purposes of this motion, that retaining counsel and filing a Commissioner's appeal are protected activities. *See* Dkt. 50 at 12.

administratively handled at the district level or the building level, it is ultimately reviewed by Dr. Szalkowski (and never before has the District rejected his recommendation). Because the outcome would have been the same with or without the escalation, there is no basis to conclude that such conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *See Cox*, 654 F.3d at 273 (internal citation omitted).

Moreover, Plaintiffs fail to establish the required causal link. They rely heavily on an internal e-mail in which Braunscheidel indicated that A.C.'s request will be handled at the district level because Plaintiffs "involved attorneys." Indeed, Braunscheidel testified that, as Acting Superintendent, she issued a directive in or around October 2024 to building administrators and nurses stating that A.C.'s exemption request will be handled at the District level. She credibly explained, however, that her directive closely followed an e-mail communication from A.C.'s father that expressed concern about medical information being shared by the middle school nurse with the children. Braunscheidel was also aware that the family had previously submitted a fraudulent medical document to the District regarding their other daughter, which further explains why she believed that closer attention was necessary, and thereby undercuts any causal link between the escalation and any protected activity.

b. *Temporary Exclusion of A.C. from School*

Plaintiffs also rely on the fact that A.C. was excluded from school for approximately two weeks because she did not have the required Tdap vaccination

—even though she had an appointment scheduled for December 3, 2024 with Dr. Riccione. The record does not support a causal link between A.C.'s exclusion from school and Plaintiffs' protected activities.

Braunscheidel credibly testified that, upon receiving a letter from the office of the Education Commissioner in or around October 2024 indicating that Plaintiffs' request for a stay of the District's exclusion order had been denied, she believed that she lacked authority to allow A.C. to remain in school (without the Tdap vaccine or an exemption). Braunscheidel, therefore, believed she had no choice but to disallow A.C. from attending school—despite her previous position that A.C. should be allowed to stay in school pending the outcome of the appeal because it was "the right thing to do."

In addition, Braunscheidel credibly testified that she believed that, under District policy, a student without a required vaccine (or an exemption) may remain in school pending a doctor's appointment *only* where the vaccination is scheduled to occur at the appointment—not where, like in A.C.'s case, the appointment was to *determine whether to receive the vaccine*.[17]

On these facts, there is no basis to conclude that A.C.'s temporary exclusion from school was causally connected to Plaintiffs' protected activities.

_____

[17] There is no evidence in this record of a contrary policy.

c. *Dr. Szalkowski's Recommendation*

Plaintiffs also cannot rely on Dr. Szalkowski's recommendation to deny the December 3, 2024 request that had been completed and signed by Dr. Riccione. Indeed, Dr. Szalkowski took numerous steps that amounted to second-guessing Dr. Riccione's medical opinion regarding A.C.'s need for an exemption. And that exceeds the bounds of his statutory authority in reviewing a request. *See Miller*, 130 F.4th at 269 (Even "though school officials have the authority to conclude that the documents submitted in support of a medical exemption contain sufficient (or insufficient) information, they do not have 'discretion to approve or deny exemptions on a case-by-case basis' *for any reason*") (emphasis in original). Nevertheless, that, itself, does not give rise to unlawful retaliation in violation of the First Amendment.[18]

Dr. Szalkowski also testified that he had previously reviewed an exemption request from the same family that was "full of red flags." It is thus reasonable to infer that, as a result, he was primed to consider this request with closer scrutiny. There is no evidence to suggest that Dr. Szalkowski proceeded in this matter because Plaintiffs engaged in any protected activity.

d. *Department of Health Inquiry*

Plaintiffs also point to the fact that Dr. Croft sought a second opinion from the Department of Health regarding Dr. Szalkowski's recommendation to deny

---

[18] But see the analysis of Plaintiffs' state-law claim below.

A.C.'s exemption request. Dr. Croft credibly testified that, even *without* input from the Department of Health, he still would have denied the request. Accordingly, there is no actionable adverse action because such conduct would not "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *See Cox*, 654 F.3d at 273 (internal citation omitted).

### e. *The District's Ultimate Decision*

Lastly, the record does not support that the District's ultimate decision to deny A.C.'s exemption request was unlawfully retaliatory. The decision was issued in late December of 2024—several weeks after Plaintiffs withdrew their Commissioner's appeal. In addition, Dr. Croft credibly testified that the District always accepts Dr. Szalkowski's recommendation regarding an exemption request —which aligns with what happened here.

In sum, in this posture, the record does not support a First Amendment retaliation claim.

### 2. Fourteenth Amendment Equal Protection (Sixth Claim)

Plaintiffs also "assert a 'class of one' equal protection claim" under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *See* Dkt. 51 at 17. They purport that "A.C.'s exemption [request] was treated differently than all others as no other medical exemption had ever been escalated to NYSDOH for review before A.C.'s request" and "no rational explanation exists for why A.C.'s exemption was singled

out for heightened scrutiny while other exemptions were granted without question." *Id.* at 17-18. Their claim fails on this record.

In *Olech*, the "Supreme Court held that [a plaintiff] could . . . state an Equal Protection claim by alleging '[1] that she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Olech*, 528 U.S. at 564)). The Court in *Olech* "declined to specify the degree of similarity required between a plaintiff and her comparator." *Id.* at 91-92.

The Second Circuit, however, "addressed that omission and set forth the . . . similarity standard for an *Olech* cause of action." *Id.* at 92 (citing *Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005)).[19] It concluded that "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Id.* (internal citation omitted). More precisely,

> a plaintiff must establish that he and a comparator are '*prima facie* identical' by showing that[:] (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Id.* (internal citation and quotation marks omitted). And "the existence of highly similar circumstances provides the basis for inferring that the plaintiff was

---

[19] The Second Circuit "later overruled *Neilson* insofar as it allowed public employees to assert *Olech* claims against their government employers," but it "left intact *Neilson*'s articulation of the elements of an *Olech* claim." *Id.* at 92 n.3.

intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Id.* (internal citation, quotation marks, and alterations omitted).

Here, Plaintiffs fail to identify a "*prima facie* identical" comparator. The circumstances surrounding the A.C.'s exemption request are unique in several respects. For example, Plaintiffs had previously submitted a separate exemption request on behalf of A.C. issued by an out-of-state organization that, according to Dr. Szalkowski, was "full of red flags." A.C.'s mother also submitted a medical record to the District that she had intentionally altered to erroneously depict her other daughter's vaccination status. In addition, shortly before A.C.'s exemption request was escalated to the District level, A.C.'s father had contacted the District to express concern about the middle school nurse supposedly sharing medical information with students. Moreover, the submission, review, and rejection of A.C.'s December exemption request all occurred *after* this lawsuit was commenced. There is no evidence, in this record, of another similar situation in the District's history.

In sum, the "facts presented by this case are, to say the least, *sui generis.*" *In re Joe's Friendly Serv. & Son, Inc.*, 645 B.R. 94, 130 (Bankr. E.D.N.Y. 2022). Because Plaintiffs fail, on this record, to identify a comparator with anywhere near

the "extremely high" degree of similarity required, there is no likelihood of success

on an *Olech* claim.[19]

### 3. ADA and RA (First and Second Claims)

Plaintiffs also assert disability discrimination claims, specifically, under Title

II of the ADA against all Defendants, and under the RA against the District and

Defendants Croft, Braunscheidel, Szalkowski, Anderson, Gray, Ingraham, and

Dell'Oso. *See* Dkt. 25 ¶¶ 168-190. These claims also fall short in this posture.

As a preliminary matter, to the extent Plaintiffs assert ADA or RA claims

against the Individual Defendants in their individual capacities, those claims fail

because neither provision provides for individual liability. *See Garcia v. S.U.N.Y.*

*Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [the

plaintiff] is suing the individual defendants in their individual capacities, neither

Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual

capacity suits against state officials").

---

[19] Plaintiffs also fail, in this posture, under the separate equal protection theory of
non-class-based discrimination set forth in *LeClair v. Saunders*, 627 F.2d 606, 607
(2d Cir. 1980). To "prevail on such a claim, a plaintiff must prove that (1) the
person, compared with others similarly situated, was selectively treated, and (2) the
selective treatment was motivated by an intention to discriminate on the basis of
impermissible considerations, such as race or religion, to punish or inhibit the
exercise of constitutional rights, or by a malicious or bad faith intent to injure the
person." *Hu*, 927 F.3d at 91. *Leclair* "requires a reasonably close resemblance
between a plaintiff's and comparator's circumstances." *Id.* at 93 (internal citation
and quotation marks omitted). On this record, Plaintiffs fail to establish intent to
discriminate on the basis of impermissible considerations, or malicious or bad faith
intent to injure Plaintiffs. Nor do they identify a valid comparator, for the reasons
discussed above.

In addition, all of Plaintiffs' ADA and RA claims lack merit on this preliminary injunction record. To "make out a *prima facie* case under the ADA or Rehabilitation Act, a plaintiff must show '(1) that [she] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [she] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [her] disability." *Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 241 (W.D.N.Y. 2012) (quoting *Harris v. Mills*, 572 F.3d 66, 73–74 (2d Cir. 2009)).

A "person has a 'disability' under the ADA (or Rehabilitation Act) if [s]he has: (a) 'a physical or mental impairment that substantially limits one or more [of his] major life activities,' (b) 'a record of such an impairment,' or (c) is 'regarded as having such an impairment.'" *Veldran v. Dejoy*, 839 F. App'x 577, 579 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B)). Major life activities "include 'caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021) (quoting 45 C.F.R. § 84.3(j)(2)(ii)).

Here, the record does not support that A.C. is a qualified individual with a disability within the meaning of these statutes. Plaintiffs fail to demonstrate how any verbal or motor tics A.C. may experience substantially limit any major life activity. In fact, Dr. Riccione's testimony indicates that A.C. generally functions

27

normally, and that her tics occur only sporadically. A.C.'s mother also testified that A.C. has done well in school and participates in activities such as cheerleading.

In sum, because Plaintiffs fail to demonstrate that A.C.'s tic disorder substantially limits a major life activity—or that she has a record of, or is regarded as having, such an impairment—Plaintiffs' ADA and RA claims fail to support a preliminary injunction.

### 4. Fourteenth Amendment Due Process (Fifth Claim)

Plaintiffs also claim that Defendants Croft, Braunscheidel, Szalkowski, Gray, Ingraham, Anderson, and Andrews violated their Fourteenth Amendment Due Process Rights. *See* Dkt. 25 ¶¶ 214-228. The "touchstone of due process is protection of the individual against arbitrary action of government." *Leebaert v. Harrington*, 332 F.3d 134, 139 (2d Cir. 2003) (internal citation and quotation marks omitted). In this case, Plaintiffs assert both substantive due process and procedural due process claims. They fail on this record.

### a. *Substantive Due Process*

Substantive due process rights "safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (internal citation and quotation marks omitted). An "as applied challenged," like Plaintiffs assert here, "'requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face,

28

deprived the [plaintiff] to whom it was applied of a protected right.'" *Goe*, 43 F.4th at 30 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006)).

For non-legislative conduct, like that alleged here, the Second Circuit "use[es] the shocks the conscience test to assess substantive due process challenges to government conduct." *Goe*, 43 F.4th at 30. Accordingly, "to determine whether government conduct infringes on a substantive due process right," the Second Circuit "first identif[ies] the 'constitutional right at stake[,]' or the 'deprivation of property' interest at issue." *Id.* (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). And if the court "identif[ies] either," it "then asses[es] whether the government's alleged conduct shocks the conscience." *Id.*[20]

Here, Plaintiffs fail to satisfy the first prong. They allege that they have "a protected property interest in their children's public education." Dkt. 25 ¶ 215.[21] Indeed, while the "right to education does not rise to the level of a fundamental right, New York law 'does appear to create a property interest in education protected by the Fourteenth Amendment.'" *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021), aff'd sub nom. *Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022) (quoting *Handberry v. Thompson*, 446 F.3d 335, 352-53 (2d Cir. 2006)). And courts "have

---

[20] To "satisfy the second prong, '[t]he interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Matzell*, 64 F.4th at 436 (quoting *Southerland v. City of New York*, 680 F.3d 127, 152 (2d Cir. 2012)).

[21] Plaintiffs also allege that they "have a protected liberty interest in making medical decisions for their children." *Id.* ¶ 216. They have not, however, pursued this theory or cited any caselaw supporting a substantive due process claim on this basis.

thus found the deprivation of education to be a valid basis for a substantive due process claim by a student expelled from school." *Id.* (citing *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 82 (2d Cir. 2010)).

At "the same time," however, "Plaintiffs' right to an education under New York State law is limited by the New York's mandatory school vaccination requirement, and '[t]he case law clearly establishes that conditioning school enrollment on vaccination has long been accepted by courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases.'" *Id.* (quoting *V.D. v. State of New York*, 403 F. Supp. 3d 76, 87 (S.D.N.Y. 2019)). As such, in *Goe*, the court concluded that the plaintiffs "did not plausibly allege an infringement of a constitutional right or the deprivation of a property interest in education." *Goe*, 43 F.4th at 34 (affirming district court's conclusion that "the Plaintiffs' exclusion from school ultimately resulted from their decisions not to comply with a condition for school enrollment permissibly set by the state; the fact that Plaintiffs felt that their serious medical issues compelled them not to comply with that condition does not change that"). *See Doe*, 520 F. Supp. 3d at 258–59.

In sum, because Plaintiffs fail to identify a constitutional right at stake, or deprivation of a property interest, their substantive due process claim fails.[22]

---

[22] Because Plaintiffs fail to satisfy the first prong of the test, the Court need not assess whether the Individual Defendants engaged in conscious-shocking conduct.

b. *Procedural Due Process*

Plaintiffs also argue that Defendants violated their procedural due process rights by: (1) "failing to provide adequate notice"; (2) "failing to provide a meaningful opportunity to be heard"; (3) "failing to follow established procedures"; (4) "making arbitrary decisions without proper basis"; and (4) "failing to provide proper appeals processes." *See* Dkt. 25 ¶¶ 217-221.

To "prevail on this claim, [Plaintiffs] must show that [they] possessed a protected liberty or property interest, and that [they were] deprived of that interest without due process." *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001) (internal citation and quotation marks omitted).

Here, even if Plaintiffs possessed a protected liberty or property interest, they were not deprived of that interest without due process of law. In "evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures[;] and (b) claims based on random, unauthorized acts by state employees.'" *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). In the "latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880.

31

In this case, Plaintiffs base their claim on individual acts of District employees, rather than on established state procedures. *See, e.g.*, Dkt. 25 ¶ 226(a) (alleging that Braunscheidel "[m]ade arbitrary decisions without proper basis"); ¶ 226(f) (alleging that Andrews "[p]articipated in medical decisions without proper authority and reviewed confidential information beyond his scope"). And a meaningful post-deprivation remedy—namely, an Article 78 proceeding—does exist, thereby defeating Plaintiffs' procedural due process claim.

In an analogous posture, the Second Circuit held that, if a "medical exemption is denied by school authorities, a parent has the right to . . . seek judicial review in state court through an Article 78 proceeding." *Goe*, 43 F.4th at 34. And the "Second Circuit has squarely held that a post-deprivation hearing via the Article 78 process satisfies constitutional due process requirements." *Carnell v. Myers*, No. 17-CV-7693 (KMK), 2019 WL 1171489, at *6 (S.D.N.Y. Mar. 13, 2019). *See Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes"); *McMenemy*, 241 F.3d at 289 ("We agree with the district court that the availability of an Article 78 proceeding under New York law provided [the plaintiff] with an adequate post-deprivation remedy such that no procedural due process violation occurred, even if [the plaintiff] possessed a cognizable property interest").

Plaintiffs' procedural due process claim fails on this record.

5. *Monell* Liability (Ninth Claim)

Plaintiffs also assert a *Monell* claim against the District under Section 1983 on the grounds that the District allegedly maintained various unlawful policies and customs. *See* Dkt. 25 ¶¶ 259-276. Because Plaintiffs fail to establish any underlying Constitutional violations, however, their *Monell* claim is not viable. *See Goe,* 43 F.4th at 34 ("as the district court correctly concluded that the [complaint] failed to plausibly allege any underlying constitutional violations, it did not err in dismissing the municipal liability claims against the School District Defendants"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

6. Remaining Federal Claims

To the extent Plaintiffs assert additional federal claims in their Amended Complaint, including under HIPAA (Third Claim), Right to Refuse Medical Treatment (Seventh Claim), and Constitutional Privacy (Eighth Claim), those claims are undeveloped on this record and provide no grounds for relief here.[23]

7. State Law Claims

Lastly, the Court addresses Plaintiffs' state law claims. The Amended Complaint asserts a claim for "New York State Constitutional Violations" (Tenth

---

[23] Plaintiffs make no mention of these claims in their preliminary injunction motion, pre-hearing brief, or post-hearing brief.

Claim) on the grounds that "Defendants have deprived and continue to deprive A.C. of her constitutional right to education" in various ways. *See* Dkt. 25 ¶¶ 277-264 [*sic*].[25] In addition, as discussed above, Plaintiffs' Amended Complaint includes an Article 78-type claim based on the improper denial of A.C.'s exemption request. *See, e.g., id.* ¶¶ 1-5, 10-14, 71-76, 112, 141-42, 270-74.

For the reasons below, the Court has supplemental jurisdiction over each of Plaintiffs' state-law claims.[26] And the Article 78-type claim is likely to succeed on the merits.

a. *Supplemental Jurisdiction Framework*

The Supreme Court "has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact, such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (internal quotation marks omitted).

---

[25] These allegations appear on pages 45-46 of the Amended Complaint, which contain errors in paragraph numbering.

[26] Where, like here, "[d]iversity jurisdiction . . . appears to be absent," the "state claims may lie only if the Court exercises supplemental jurisdiction." *E-Smart Techs., Inc. v. Corse*, No. 03 CIV. 7060 (RO), 2004 WL 2093531, at *3 (S.D.N.Y. Sept. 17, 2004).

Congress "has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading." *Id.* at 165 (citing 28 U.S.C. § 1367). The "statute provides[:] 'in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* (quoting § 1367(a)). In short, "[p]endent jurisdiction exists only where the state and federal claims comprise one case under Article III, tested by whether they share a 'common nucleus of operative fact,' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (quoting *Gibbs*, 383 U.S. at 725).

After "establishing that supplemental jurisdiction encompasses 'other claims' in the same case or controversy as a claim within the district courts' original jurisdiction . . . the statute confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chicago*, 522 U.S. at 173 (quoting Section 1367(a)). Specifically, a district court's "discretion to decline supplemental jurisdiction is available *only* if founded upon an enumerated category of subsection 1367(c)." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)) (emphasis in original).

Those categories include: "'(1) the claim raises a novel or complex issue of State law[;] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[;] (3) the district court has dismissed all claims over which it has original jurisdiction[;] or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1367(c)).

If "one of the [Section] 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction." *Id.* And the court "'should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote . . . [judicial] economy, convenience, fairness, and comity.'" *Id.* (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)).

b. *Plaintiffs' "Article 78"-Type Claim*

In the following subsections, the Court discusses its jurisdiction over, and the merits of, Plaintiffs' Article 78-type claim. In short, this Court has supplemental jurisdiction over this claim. Indeed, the claim arises from the same core set of facts as Plaintiffs' federal claims. And the limited exceptions that would permit the Court to decline supplemental jurisdiction do not apply. All of the relevant circumstances favor retaining jurisdiction.

Moreover, this state-law claim is meritorious on this record. Defendants exceeded the bounds of their statutory authority by impermissibly second-guessing Dr. Riccione's conclusion that the Tdap vaccine would be detrimental to A.C.'s

36

health.  In the absence of any rational basis for the District's decision to deny the exemption request, Plaintiffs are likely to prevail on the merits of this claim.

      i.  Supplemental Jurisdiction

As a preliminary matter, there is no impediment—generally speaking—to exercising jurisdiction over Plaintiffs' claim simply because it would fall under Article 78 if brought in state court.  The Second Circuit has stated that the question whether "federal courts may properly exercise supplemental jurisdiction over claims seeking relief under Article 78 is an unsettled [one] . . . ."  *DiMartile v. Hochul*, 80 F.4th 443, 446 n.1 (2d Cir. 2023).  *See also Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013), *as corrected* (Sept. 27, 2013) ("We need not decide, however, whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases have held").

In *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 343 (2d Cir. 2007), however, the Second Circuit affirmed the district court's exercise of jurisdiction over the plaintiff's Article 78 claim under the All Writs Act and the court's supplemental jurisdiction.  In the district court proceeding, the plaintiffs asserted an Article 78 claim that challenged the zoning board's denial of the plaintiff's application for a special use permit.  *See Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 482 (S.D.N.Y. 2006), aff'd, 504 F.3d 338 (2d Cir. 2007).  The district court concluded that it was "incumbent" upon it to "address the legality" of the zoning board's decision, in order to "protect the integrity" of a prior

order of the court and "to achieve the ends of justice entrusted to it." *Id.* at 559–60 (internal citations and quotation marks omitted).  The court further reasoned that it had "become intimately familiar with the merits of this case," noting, in particular, that a "full record ha[d] been developed after significant discovery . . . ." *Id.* at 561. *Cf. Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 864-65 (2d Cir. 1988) (affirming district court's decision authorizing removal of an Article 78 proceeding under the All Writs Act, where the district court had ordered the state court case to be removed because the issues raised by the Article 78 proceeding went to the "very essence" of a consent decree that had been entered by the district court).

Indeed, district courts in this circuit have "exercised supplemental jurisdiction over Article 78 claims where the court otherwise had federal jurisdiction over other claims raised." *Garofalo v. City of New York*, No. 1:22-CV-07620-NRM-VMS, 2023 WL 3792514, at *5 (E.D.N.Y. June 2, 2023) (citing *Casale v. Metro Transp. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *5–6 (S.D.N.Y. Dec. 19, 2005); *Residents & Fams. United*, 2017 WL 5496277, at *13; *Doe v. Zucker*, No. 1:17-CV-1005 (GTS/CFH), 2018 WL 3520422, at *8 (N.D.N.Y. July 20, 2018); *Cedar Dev. E., LLC v. Town Bd. of Hurley*, No. 1:21-cv-289 (MAD/TWD), 2021 WL 3422342, at *7–8 (N.D.N.Y. Aug. 5, 2021)).[26]

---

[26] The Court acknowledges, however, that the "overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." *Coastal Commc'ns Serv., Inc. v. City of New York*, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009).  But that does not preclude this Court from exercising jurisdiction here, particularly given the extraordinary circumstances presented.

*Casale*, in particular, is persuasive.[27]  There, the court recognized that, although state law "may direct that '[a] proceeding under this article shall be brought in [state] supreme court,' . . . this requirement has nothing to do with whether the proceeding falls within a federal jurisdictional statute." *Id.* at *6 (quoting CPLR 7804).  And if "such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary." *Id.*  Such a result would be "plainly inconsistent with the structure of the U.S. Constitution and its Supremacy Clause." *Doe v. New York Univ.*, 537 F. Supp. 3d 483, 492 (S.D.N.Y. 2021) (citing U.S. CONST. art. VI, cl. 2).  Moreover, Congress has "never excluded disputes of the kinds within an Article 78 proceeding, or any similar state-law proceeding, from the subject matter jurisdiction of federal courts." *Elite Med. Supply of New York, LLC v. State Farm Mut. Ins. Co.*, No. 13-CV-918-A, 2014 WL 823439, at *5 (W.D.N.Y. Mar. 3, 2014) (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348 (1961); *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000)).

Finding no impediment, in general, to exercising jurisdiction over such a claim, the Court next applies the established framework set forth in Section 1367.

As an initial matter, Plaintiffs' claim is "so related to" Plaintiffs' federal claims in this action "that they form part of the same case or controversy" under Article III.  *See* 28 U.S.C. § 1367(a).  Each of them is based on various actions that

---

[27] *Casale* addressed a motion for remand where the case had been removed to federal court following commencement in state court as a "hybrid special proceeding and action." *Id.* at *1.

Defendants took with respect to A.C.'s exemption request—and the ultimate decision to deny the request. As such, they "share a 'common nucleus of operative fact,' such that [Plaintiffs] 'would ordinarily be expected to try them all in one judicial proceeding.'" *Lyndonville*, 211 F.3d at 704 (quoting *Gibbs*, 383 U.S. at 725).

Next, the enumerated Section 1367(c) categories do not apply. First, Plaintiffs' Article 78 claim does not raise "a novel or complex issue of State law." *See* Section 1367(c)(1). Rather, it involves a straightforward application of N.Y. Pub. Health Law § 2164(8) and its implementing regulations, paired with clear Second Circuit authority regarding school officials' discretion in evaluating requests. *See Miller*, 130 F.4th at 269; *We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 151 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024).[29] Second, Plaintiffs' Article 78 claim does not "substantially predominate[] over" their federal claims. *See* Section 1367(c)(2). Plaintiffs assert nine federal causes of action claiming that Defendants' actions violate their rights under various Constitutional provisions and federal laws. Plaintiffs' state-law claim is no more complex, and does not overshadow, their federal claims in terms of proof required or relief requested. Indeed, Defendants' position that Plaintiffs fail to "plead an Article 78 claim or allege a cause of action for violations of Public Health Law § 2164," Dkt. 88 at 19, undercuts any argument that such claim

---

[29] Defendants' argument that *Lynch v. Clarkstown Cent. School Dist.*, 155 Misc. 2d 846, 849 (Sup. Ct. Rockland County, 1992), is the "only" reported New York State court decision interpreting the relevant provisions, *see* Dkt. 88 at 24, ignores these Second Circuit authorities and is, therefore, unavailing.

"predominates" over Plaintiffs' other causes of action. Third, the Court has not finally determined any of Plaintiffs' federal claims. *See* Section § 1367(c)(3).[30] Fourth, on this record, no "exceptional circumstances" give rise to "compelling reasons" to decline jurisdiction—particularly in light of the extensive litigation that has already occurred before this Court. *See id.* § 1367(c)(4).

Furthermore, judicial economy, convenience, fairness, and comity favor retaining jurisdiction. The Court and parties have invested significant resources into this case thus far. The case has been actively litigated in this Court for more than five months. The parties have engaged in meaningful discovery. The Court resolved numerous discovery motions and motions *in limine*. The Court also held a multi-day preliminary injunction hearing at which multiple witnesses testified. Indeed, it would be a "pointless waste of judicial resources to require a state court to invest the time and effort necessary to familiarize itself with a case well-known to the presiding federal judge." *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989) (retaining jurisdiction where "it would have 'stood judicial economy on its head' not to proceed with the state claims even if the [federal] action

---

[30] As discussed above, none of Plaintiffs' federal claims is likely to succeed on the merits. And the Court recognizes that, "the elimination of federal-law claims prior to trial *generally* points to declining to exercise supplemental jurisdiction in the *usual case.* . . ." *Catzin*, 899 F.3d at 86 (internal citation and quotation marks omitted) (emphasis added). That "clearly does not mean," however, "that the balance of the factors always points that way." *Id.* Rather, the "district court must still meaningfully balance the supplemental jurisdiction factors." *Id.* On this record, those factors heavily favor retaining jurisdiction—even in the absence of any likely meritorious federal claim.

had been dismissed prior to trial"). The most economical and convenient approach is to retain jurisdiction.

Concerns of fairness also counsel against forcing Plaintiffs to start over in state court. Plaintiffs have expended significant effort litigating the case in this Court—and, as discussed below, their "Article 78"-type claim is likely to succeed on the merits. Duplicative litigation in state court would undoubtedly delay any relief they may receive. In addition, the risk of harm to A.C. is substantial, as the District would likely seek to exclude her from school pending relief in state court. Defendants, meanwhile, suffer no prejudice from this issue remaining in federal court.[31]

Lastly, this Court's exercise of supplemental jurisdiction does not implicate comity concerns. The Second Circuit provides dispositive analysis of the issue on the merits, as set forth below. And this is not a case in which Plaintiffs are forum shopping or seeking to use federal court to litigate a purely state matter.

In sum, *even if Plaintiff's federal claims were dismissed prior to trial,* this is "one of the rare cases in which the court should exercise its pendent jurisdiction despite dismissal of plaintiffs' . . . federal cause[s] of action . . . ." *Boucher v. Sears,*

---

[31] The Court rejects Defendants' contention that, at the preliminary injunction hearing, they were "not permitted to examine A.C.'s substantive entitlement to an exemption, could not explore her underlying conditions, and could not offer proof as to whether or not a tic disorder constitutes a neurological condition that would serve as a contraindication for the Tdap vaccine." *See* Dkt. 88 at 29-30. The Court permitted both sides to supplement the record after the hearing. *See* Dkt. 77 ("in fairness to both sides, the forthcoming briefing *may* include reference to new affidavits, or additional deposition transcripts, that would bear on the Section 1367 and merits issues . . . .").

No. 89-CV-1353, 1995 WL 283742, at *9 (N.D.N.Y. May 8, 1995) (retaining pendant jurisdiction despite dismissal of federal claims where the "parties and the court have expended vast resources in making this case trial-ready; [d]iscovery is complete, and none of plaintiffs' state law claims presently appear[s] to involve novel interpretations of state law"). All of the relevant circumstances support retaining jurisdiction.

### ii. Merits

Plaintiffs' Article 78-type claim is likely to succeed on the merits. In a "proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious." *Weiss v. Cnty. of Nassau*, 176 A.D.3d 1085, 1086 (2d Dep't 2019) (internal citation and quotation marks omitted). If the "determination has a rational basis, it will be sustained, even if a different result would not be unreasonable." *Ward v. City of Long Beach*, 20 N.Y.3d 1042, 1043 (2013).

Here, the evidence demonstrates that, under New York State's statutory and regulatory framework regarding mandatory vaccination for students attending school, A.C. was entitled to an exemption from the Tdap vaccine. An overview of that framework, as well an analysis of Defendants' decision to deny A.C.'s exemption request, follow.

43

For "more than a century," New York "has required mandatory immunization for children to attend school." *Goe*, 43 F.4th at 25 (citing Act of Apr. 16, 1860, ch. 438, 1860 N.Y. Laws 761, 761-62). Today, "all children between the ages of two months and eighteen years must be immunized against a number of diseases to be admitted to school or to attend school for more than fourteen days." *Id.* (citing N.Y. Pub. Health Law § 2164(7)(a)). These diseases "include 'poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and, where applicable, Haemophilus influenzae type b (Hib), meningococcal disease, and pneumococcal disease.'" *Id.* (quoting N.Y. Pub. Health Law § 2164(7)(a)).

The State "has also permitted exemptions from school immunization requirements for many decades." *Id.* Currently, however, it "only allows medical exemptions from school immunization." *Id.* at 26. Under "the State's present requirements, a child may be exempted from school immunization if 'any' state-licensed physician 'certifies that such immunization may be detrimental to [the] child's health.'" *Id.* (quoting N.Y. Pub. Health Law § 2164(8)). The "request must 'contain[ ] sufficient information to identify a medical contraindication to a specific immunization.'" *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c)). School "officials enforce these requirements." *Id.* (citing N.Y. Pub. Health Law § 2164(7)(a)). And they "may require additional supporting information before granting requests for exemptions." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c)).

The regulations "require the use of a medical exemption form approved by the Health Department . . . completed and signed by a physician, certifying that 'immunization may be detrimental to the child's health.'" *Id.* A "completed form must provide 'sufficient information to identify a medical contraindication to a specific immunization and specify[ ] the length of time the immunization is medically contraindicated.'" *Id.* The regulations "also define the phrase '[m]ay be detrimental to a child's health,' as used in section 2164(8) of the New York Public Health Law, to mean 'that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care.'" *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(l)).

Here, Plaintiffs submitted a facially and procedurally valid exemption request on behalf of A.C. Specifically, they provided the District with a completed New York State Department of Health form signed by a state-licensed physician (Dr. Riccione). *See* Dkt. 26-2. The form describes "chronic" neurological vocal and motor tics, which are a "precaution" to the Tdap vaccine pursuant to guidelines issued by the Center for Disease Control and Prevention's Advisory Committee on Immunization Practices. *See* Dkt. 32-7 at 5 (identifying "progressive or unstable neurological disorder" as a precaution to Tdap). And Dr. Riccione testified that he was familiar with ACIP guidance when he completed the form. He further testified that he plans to assess A.C.'s need for an exemption on a year-by-year basis.

45

To be sure, the "statutory exemption is mandatory . . . and applies to an objectively defined group." *Miller*, 130 F.4th at 269 (internal citation and quotation marks omitted). And the "authority conferred to physicians is not discretionary; a physician's use of [his] professional medical judgment is limited by the statute and regulations." *Id.* The "same is true of the authority conferred upon school officials." *Id.* Even "though school officials have the authority to conclude that the documents submitted in support of a medical exemption contain sufficient (or insufficient) information, they do not have 'discretion to approve or deny exemptions on a case-by-case basis' for *any* reason." *Id.* (quoting *We The Patriots USA, Inc.*, 76 F.4th at 151) (emphasis in original).

As such, the law required the District to accept A.C.'s valid exemption request. Dr. Szalkowski had no authority under New York law to second-guess Dr. Riccione's medical opinion. Indeed, the "statute does not allow school officials to 'decide which reasons for not complying with the policy are worthy of solicitude.'" *Id.* at *7 n.14 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021). Because the District had no rational basis to deny the exemption request, there is a likelihood of success on the merits of this claim.

c. *The New York State Constitutional Claim*

Lastly, Plaintiffs allege that Defendants have deprived A.C. of her rights under "Article XI § 1 of the New York State Constitution[,]" which "guarantees all children the right to a free basic education." Dkt. 25 ¶¶ 277-264 [*sic*]. Article XI, Section 1 of the New York State Constitution "provides that '[t]he legislature shall

provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.'" *Sabur ex rel. Kessler v. Brosnan*, 203 F. Supp. 2d 292, 302 (E.D.N.Y. 2002) (quoting N.Y. CONST. Art. XI, § 1).

This provision, however, "does not create a private cause of action." *Id.* (citing *Donohue v. Copiague Union Free School Dist.,* 47 N.Y.2d 440, 443 (N.Y. 1979). According to the New York Court of Appeals, even a "terse reading of this provision reveals that the Constitution places the obligation of Maintaining and supporting a system of public schools upon the Legislature." *Donohue*, 47 N.Y.2d at 443. And "this general directive was never intended to impose a duty flowing directly from a local school district to individual pupils to ensure that each pupil receives a minimum level of education, the breach of which duty would entitle a pupil to compensatory damages." *Id. See also Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) ("It does not appear that this provision alone gives rise to a 'legitimate claim of entitlement' by 'children of [the] state,' because on its face it requires only that the legislature maintain a public school system") (quoting N.Y. CONST. Art. XI, § 1).

Accordingly, there is no likelihood of success on the merits of Plaintiffs' claim under the New York State Constitution. *See K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 363 (S.D.N.Y. 2005) ("Article XI does not create a private cause of action") (citing *Donohue*, 47 N.Y.2d at 443); *Schafer v. Hicksville*

47

*Union Free Sch. Dist.*, No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *19 (E.D.N.Y. Mar. 31, 2011) (same).[31]

## B. Irreparable Harm

The Court next turns to the irreparable harm factor. Plaintiffs argue that the exclusion of A.C. from school "will cause A.C. irreparable harm, including loss of educational access, emotional distress, social stigmatization, and academic disruption." *See* Dkt. 26-13 at 3. They further argue that the "cumulative impact of A.C.'s exclusion from school creates an escalating harm that becomes increasingly difficult to remedy over time." *Id.* at 15.

---

[31] Given the common nucleus of facts with Plaintiffs' other claims, the Court has supplemental jurisdiction over this New York constitutional claim. No enumerated category under Section 1367(c) applies. And in light of its clear lack of merit, the Court retains jurisdiction in the interests of economy, convenience, fairness, and comity. *See Ingram v. Nassau Health Care Corp.*, No. 17CV05556JMASIL, 2020 WL 806715, at *2 (E.D.N.Y. Feb. 14, 2020) ("because all of those state law claims are plainly meritless, the Court finds that it is appropriate to exercise supplemental jurisdiction over those claims and to dismiss them on the merits rather than subject Defendant to additional frivolous litigation in state court"); *Glendora v. Marshall*, 947 F. Supp. 707, 712 (S.D.N.Y. 1996), aff'd, 129 F.3d 113 (2d Cir. 1997) (adopting recommendation to "retain[] supplemental jurisdiction" over state law claims "but then [find] them deficient on the merits"); *Garry v. McPhillips*, No. 9:21-CV-172 (MAD/MJK), 2024 WL 4023890, at *3 (N.D.N.Y. Sept. 3, 2024) ("the most prudent course of action is to exercise supplemental jurisdiction over Plaintiff's state law negligence claim given the common nucleus facts and judicial economy"); *Eng v. City of New York*, 715 F. App'x 49, 54 (2d Cir. 2017) (summary order) (rejecting argument that, "even assuming the allegations are insufficient to make out *prima facie* claims under [federal and state law] . . . the district court should have declined to exercise supplemental jurisdiction," reasoning that, because the federal and state claims "all arise out of the same common nucleus of operative facts, the district court did not abuse its discretion in exercising supplemental jurisdiction over the [state] claims").

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). It exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

Here, A.C. would suffer irreparable harm absent an injunction. Under "circumstances similar to those presented here, school-aged children have been deemed irreparably injured as a result of being excluded from attending classes." *NM v. Hebrew Acad. Long Beach*, 155 F. Supp. 3d 247, 257 (E.D.N.Y. 2016). *See also Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 426 (E.D.N.Y. 2010), aff'd, 500 F. App'x 16 (2d Cir. 2012) ("[the court is] satisfied that there would be irreparable harm to this child entering school after [the start of the school year]"); *Check ex rel. MC v. New York City Dep't of Educ.*, No. 13-CV-791 SLT LB, 2013 WL 2181045, at *9 (E.D.N.Y. May 20, 2013) (because "courts considering this issue routinely assume that a child prevented from attending school would suffer irreparable harm, plaintiffs['] application turns on her likelihood of success on the merits") (citing *Lewis v. Sobol*, 710 F. Supp. 506, 507 (S.D.N.Y. 1989)). And to avoid exclusion from school, A.C. would have to receive the Tdap vaccination, which may irreparably harm her health—as at least her doctor testified.

The irreparable harm factor favors Plaintiffs on this record.

### C. Public Interest and Balance of Equities

The Court next considers whether a preliminary injunction is in the public interest and whether the balance of equities tips in Plaintiffs' favor. Plaintiffs argue that "A.C. faces ongoing educational, emotional, and constitutional harm, which far outweighs any inconvenience to the District in complying with the requested injunctive relief." *See* Dkt. 26-13 at 16. Defendants argue that "[p]ublic health is a matter of state concern, and the State and District have a compelling interest in the consistent and coherent administration of public health measures." Dkt. 32-1 at 31.

Here, the balance of equities tips in Plaintiffs' favor. Absent an injunction, Plaintiffs are harmed because A.C. must either receive the Tdap vaccine—contrary to her doctor's recommendation—or face exclusion from school. Defendants' equitable counterweights, if any, are insufficient to deny relief on this record. The District maintains an exceedingly high vaccination rate amongst its students. The marginal increase in public health risk that might result from one student not receiving a Tdap vaccine falls far short of the risk of irreparable harm posed to A.C. absent an injunction.

### D. Summary

All of the preliminary injunction factors favor Plaintiffs. Plaintiffs have demonstrated a likelihood of success on the merits of their Article-78 type claim due to the District's improper denial of their valid exemption request. This Court has, and finds no grounds to decline, supplemental jurisdiction over that claim. Further,

Plaintiffs face irreparable harm absent an injunction, given that A.C. would have to either receive the Tdap vaccine—which cannot be undone—or be excluded from school. The minimal public health concerns that may result from an injunction, and the balance of equities, do not justify denying relief on this record.

## II.    SECURITY

Federal Rule of Civil Procedure 65(c) requires the Court to consider whether it should require plaintiffs to post security and, if so, in what amount. *See Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement [in certain situations]").

On these facts, the Court will not require Plaintiffs to post security because a bond requirement does not fit the fact-pattern and interests involved in this case. *See id.* at 135-36 (affirming district court's decision not to require security where the district court "found that [defendants] would not suffer damage or loss from being forced to arbitrate in lieu of prosecuting their state-court cases"). *See also Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976) (because no request for a bond was ever made in the district court, and because, under Fed. R. Civ. P. 65, "the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court").

## CONCLUSION

For the above reasons, the Court GRANTS Plaintiffs' motion for a preliminary injunction as follows: it is

ORDERED that Defendants are enjoined from excluding A.C. from school on the basis of her not receiving the Tdap vaccine; and it is further

ORDERED that the District shall accept A.C.'s December 3, 2024 medical exemption from Dr. Riccione as valid under New York Public Health Law § 2164(8); and it is further

ORDERED that Defendants are enjoined from enforcing against Plaintiffs any policy or practice that permits the substitution of the District's or its medical director's substantive judgment for that of a licensed physician under New York Public Health Law § 2164(8); and it is further

ORDERED that this preliminary injunction shall remain in effect pending disposition of the case on the merits—or the conclusion of the current school year, whichever is earlier; and it is further

ORDERED that no bond shall be required.


SO ORDERED.

Dated:        April 25, 2025
              Buffalo, New York


              _____
              JOHN L. SINATRA, JR.
              UNITED STATES DISTRICT JUDGE